Steven J. Goon (State Bar No. 171993)
sgoon@rutan.com
Benjamin C. Deming (State Bar No. 233687)
bdeming@rutan.com
Sarah Gilmartin (State Bar No. 324665)
sgilmartin@rutan.com
RUTAN & TUCKER, LLP
611 Anton Boulevard, Suite 1400
Costa Mesa, California 92626-1931
Telephone: 714-641-5100
Facsimile: 714-546-9035

Attorneys for Plaintiff
LOANDEPOT.COM LLC

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOANDEPOT.COM LLC, a Delaware limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>MOIRANGTHEM BIRBANTA, an individual, and DOES 1 through 10,<br><br>Defendants. | Case No.<br><br>**COMPLAINT FOR:**<br><br>1. **FEDERAL TRADEMARK INFRINGEMENT [15 U.S.C. § 1114]**<br><br>2. **FALSE DESIGNATION OF ORIGIN AND UNFAIR COMPETITION [15 U.S.C. § 1125(a)]**<br><br>3. **CYBERSQUATTING [15 U.S.C. § 1125(d)(1)]:**<br><br>4. **COMMON LAW TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff loanDepot.com, LLC, a Delaware limited liability company ("Plaintiff" or "loanDepot") alleges as follows against defendant Moirangthem Birbanta ("Birbanta" or "Defendant") and DOES 1-10 (with Birbanta, "Defendants"):

# NATURE OF THE CASE

1. Defendant, an individual residing in India, has registered at least four domain names that are confusingly similar to Plaintiff's trademark LOANDEPOT in a flagrant attempt to trade off the renown and goodwill of Plaintiff's LOANDEPOT marks and deceive unsuspecting consumers into a gift card scam, as explained further below. Through the Uniform Domain-Name Dispute-Resolution Policy ("UDRP"), Plaintiff filed two complaints against Defendant, which resulted in transfer of Defendant's first three domain names to Plaintiff. Nevertheless, Defendant proceeded to register a fourth domain name incorporating Plaintiff's LOANDEPOT mark and perpetrated the same scam. On information and belief, Defendant will continue to register new, imitative domain names unless enjoined. Plaintiff thus brings this action to protect its valuable intellectual property rights.

2. Plaintiff seeks where appropriate injunctive relief, statutory damages, an award of Defendant's profits, attorney's fees, and costs against defendants for trademark infringement under 15 U.S.C. section 1114(1)(a) and (b); false designation of origin and/or sponsorship under 15 U.S.C. section 1125(a); cybersquatting under 15 U.S.C. section 1125(d); and common law trademark and trade name infringement, and unfair competition, with respect to Plaintiff's federally registered trademark LOANDEPOT for, among other things, money lending, loan servicing, and loan financing (the "LOANDEPOT Mark").

# PARTIES

3. Plaintiff is a limited liability company organized and existing under the laws of the State of Delaware with its principal place of business at 26642 Towne Centre Drive, Foothill Ranch, California 92610.

4. On information and belief, Defendant Birbanta is an individual residing in the India, specifically Top Awang Leikai near Tinsit Road Porompat, Imphal, Manipur 795008, India.

5. On information and belief, Defendant Birbanta has deceived and

intends to deceive consumers residing in this judicial district that he sells home loan products through his interactive website, https://www.unitedloandepot.com/, and that he is affiliated with Plaintiff by virtue of his use of the LOANDEPOT Mark. Defendant, however, uses his website and exploits his false affiliation with Plaintiff to perpetrate a gift card scam, as explained further below.

6. On information and belief, Defendant has purposefully directed his fraudulent activities toward consumers residing in this judicial district, including without limitation by deceiving unsuspecting California consumers into a fraudulent gift card scam, and exploiting the goodwill associated with Plaintiff's LOANDEPOT Mark to do so – all the while on notice that Plaintiff is a resident of this judicial district and that Plaintiff would suffer harm in this judicial district.

7. By engaging in the activities set forth herein, Defendant has purposefully availed himself of the privilege of conducting activities in this forum, thereby invoking the benefits and protections of the laws of the State of California, and of this judicial district in particular.

8. On information and belief, each of the defendants named herein as DOES 1 through 10, inclusive, performed, participated in, or abetted in some manner, the acts alleged herein, proximately caused the damages alleged below, and are liable to Plaintiff for the damages and relief sought herein. The identities of the individuals and entities named as defendants DOES 1 through 10, inclusive, are not presently known, but Plaintiff will seek to amend the Complaint to identify them when their names and identities have been ascertained.

9. On information and belief, Plaintiff alleges that, in performing the acts and omissions alleged herein, and at all times relevant hereto, each of the Defendants was the agent, servant, alter ego, employee, and/or successor or predecessor in interest of each of the other Defendants, and was at all times acting within the course and scope of such relationship, with the knowledge, approval, consent, or ratification of each of the other Defendants.

## JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. sections 1331 and 1338, and 15 U.S.C. section 1121, because Plaintiff's claims arise, in part, under the Lanham Act, 15 U.S.C. section 1051 *et seq*. This Court has supplemental jurisdiction pursuant to 28 U.S.C. sections 1338(b) and 1367 over Plaintiff's claims arising under the laws of the State of California.

11. This Court also has jurisdiction under 28 U.S.C. section 1332 because Plaintiff is a citizen of a State and Defendant is a citizen of a foreign state, and the matter in controversy exceeds $75,000, exclusive of interest and costs.

12. This Court has personal jurisdiction over Defendants because, on information and belief, Defendants have repeatedly exploited Plaintiff's LOANDEPOT Mark to perpetrate a gift card scam on consumers, including consumers residing in this judicial district, via Defendants' interactive website at: https://www.unitedloandepot.com/ – all while knowing that Plaintiff is a resident of this judicial district and that Plaintiff would suffer harm here. Defendant's intentional actions were thus expressly aimed at this judicial district.

13. Through the two UDRP proceedings that Plaintiff initiated against Defendant, Defendant learned that Plaintiff resides within this judicial district. Even after those proceedings ended in Plaintiff's favor, Defendant continued to specifically and individually target Plaintiff by exploiting Plaintiff's LOANDEPOT Mark to deceive unsuspecting consumers into a fraudulent gift card scam under the guise that Defendant offered loans, like Plaintiff. Defendant knew he would cause harm in California because his scheme depended on diverting users from Plaintiff, a company he knew to be located in California.

14. Venue is proper in the Central District of California under 28 U.S.C. section 1391(a) and section 1391(b) because a substantial part of the events, omissions and acts that are the subject matter of this action, and the resulting injury to Plaintiff, occurred within the Central District of California. This action arises out

of Defendant's trademark infringement as alleged below, and the threatened and actual harm to Plaintiff by reasons thereof. Plaintiff is informed and believes, and thereon alleges, that Defendant conducts business in this judicial district through his infringing, interactive website and receives compensation from diverting customers in this judicial district from Plaintiff's own website to Defendant's infringing website, as alleged below. Furthermore, by his actions alleged herein, Defendant has caused harm to Plaintiff at its headquarters in this judicial district.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

### I. Plaintiff's LOANDEPOT Marks

15. Plaintiff is one of the top non-bank mortgage lenders in the United States and is the second largest non-bank mortgage lender doing business in all 50 states since as early as 2009. During that time, Plaintiff has provided its lending services under its LOANDEPOT Mark.

16. Plaintiff acquires more than 500,000 potential borrowers every month, with 1,700 licensed loan officers holding more than 10,000 licenses to serve borrowers in all 50 states. Since its inception, Plaintiff has funded over $100 billion in home, personal, and home equity loans. Plaintiff is the proud owner of an A-rating from the Better Business Bureau (BBB) and has developed a nationwide reputation for quality consumer financial products.

17. Plaintiff owns a number of federal trademark registrations for the LOANDEPOT Mark (collectively referred to herein as the "LOANDEPOT Marks"), including those listed below:

| Mark | Reg. No. | Reg. Date | Class |
| --- | --- | --- | --- |
| LOANDEPOT | 3,804,520 | June 15, 2010 | 36 |
| loanDepot (logo) | 3,875,936 | November 16, 2010 | 36 |
| LOANDEPOT | 4,026,025 | September 13, 2011 | 35, 36, 38, 41, and 45 |

True and correct copies of the certificates of registration for these LOANDEPOT

Marks are attached to this complaint as **Exhibit A**.

18. Since at least as early as 2009, and long before Defendants used any similar mark, Plaintiff has continuously, prominently and exclusively used its LOANDEPOT Marks to denote the source of its products and services, including money lending, loan servicing, and loan financing, in the United States. During this period, Plaintiff has committed significant amounts of time, effort and money to developing a widely respected reputation in the loan servicing industry through which the LOANDEPOT Marks have acquired secondary meaning indicating Plaintiff as the source of its high-quality goods and services. Thus, before the acts complained of in this Complaint, members of the general consumer population recognized the LOANDEPOT Marks as exclusive source identifiers for money lending, loan servicing, and loan financing as originating from, sponsored or approved by Plaintiff.

19. On information and belief, Plaintiff has the exclusive right to use the LOANDEPOT Marks in interstate commerce, and Plaintiff's use has been exclusive since it first adopted the LOANDEPOT Marks, with the exception of unauthorized uses such as by Defendants as described in this Complaint.

20. Plaintiff's LOANDEPOT Marks are valid and subsisting and remain in full force and effect.

21. Plaintiff has widely advertised, promoted and marketed goods under its LOANDEPOT Marks in numerous and diverse advertising media, including print and the internet, to promote the strength and renown of its LOANDEPOT Marks. Plaintiff has achieved a high level of commercial success in selling products and services bearing its LOANDEPOT Marks, and has built a valuable reputation and substantial goodwill, with which the LOANDEPOT Marks have become synonymous.

## II. Plaintiff's LOANDEPOT Website

22. Plaintiff offers its products and services, including home mortgage,

refinance, equity, and personal loan products, under its LOANDEPOT Marks directly to consumers through its website, <loandepot.com> (the "LOANDEPOT Website"). Plaintiff has owned this domain name since 2009.

23. Through the LOANDEPOT Website, consumers can apply for loans and/or loan refinancing; connect with experts to discuss loan options; learn about the home purchase and/or home refinancing processes; and more.

24. The LOANDEPOT Website prominently features the LOANDEPOT Marks, appearing as such:



### III. Background of Defendants' Repeated Attempts to Trade Off the Renown and Goodwill of Plaintiff's LOANDEPOT Marks

25. On information and belief, Defendants have created multiple websites that without authorization use Plaintiff's LOANDEPOT Marks to unlawfully profit from the goodwill and reputation of Plaintiff and Plaintiff's LOANDEPOT Marks and to divert consumers away from Plaintiff's own online website.

26. On information and belief, Defendants first registered the following domains: <usloandepot.com> and <theusloandepot.com>, which incorporated Plaintiff's LOANDEPOT Marks. The intended effect of Defendants' use of Plaintiff's marks is to deceive consumers into believing they are dealing directly with Plaintiff or that Defendants' website is affiliated, associated and sponsored by Plaintiff.

27. Defendants used the websites to perpetrate a gift card scam where individuals looking to borrow money (presumably from Plaintiff) contacted Defendants through the contact information provided on the website. The callers were instructed to purchase gift cards and provide the gift card number to the Defendants in order to "prove" they could afford loan payments.

28. On information and belief, such scams succeed because the consumer, desperate for a loan, is eager to believe one of the many excuses for such an unordinary request (such as to "prove they can afford the payments"), follows the scammer's instructions and is ultimately duped. In order to provide an air of legitimacy, scammers (such as Defendants) will capitalize on recognizable brands of established financial institutions and lenders. In this case, Defendants latched on to the LOANDEPOT brand.

29. The actual confusion caused by Defendants' use of the LOANDEPOT Marks resulted in several negative reviews of Plaintiff and one victim even showed up in Plaintiff's New York branch distraught.

30. As a result, on January 29, 2020, Plaintiff filed a Complaint in accordance with the Uniform Domain Name Dispute Resolution Policy ("UDRP"), adopted by the Internet Corporation for Assigned Names and Numbers ("ICANN"), alleging that Defendant registered his websites to trade off the renown and goodwill of the LOANDEPOT Marks and perpetrate his scam. A true and correct copy of that Complaint is attached hereto as **Exhibit B**.

31. The Annexes to the UDRP Complaint put Defendant on notice that Plaintiff resides within this judicial district, with (1) the Complaint identifying Plaintiff as: "loanDepot.com, LLC, 26642 Towne Centre Drive, Foothill Ranch, CA 92610" (*see* Exhibit B); and (2) Annex G including California Secretary of State records showing that Plaintiff's entity address and entity mailing address are both 26642 Towne Centre Drive, Foothill Ranch, CA 92610. A true and correct copy of the Annexes to the first UDRP Complaint are attached hereto as **Exhibit C**.

32. The Annexes to the UDRP Complaint included negative reviews of Plaintiff by victims of Defendants' scam. (*See* Exhibit C.) For example, in Annex O, one victim writes: "This is a scam! They asked me to buy an EBAY card to put $150 on to receive my $3000, once that was done they asked me to add an additional $300 which I did not and they simply canceled my loan and took my money. I am now pressing charges on them for scamming me."

33. On February 28, 2020, the Forum issued a decision transferring the domains to Plaintiff and holding that: "Respondent [i.e., Defendant] is attempting to pass off as Complainant [i.e., Plaintiff] to forward a fraudulent scam." A true and correct copy of the Forum's Decision is attached hereto as **Exhibit D**.

34. In response to losing the domain names in the first UDRP action, Defendants simply registered yet another confusingly similar domain name: <capitalloandepot.com>. That website, like the first two, was used to deceive unsuspecting consumers into a fraudulent gift card scam.

35. On July 2, 2020, Plaintiff filed another UDRP Complaint, a true and correct copy of which is attached hereto as **Exhibit E**.

36. Like the first UDRP Complaint, this Complaint notified Defendant that Plaintiff resides within this judicial district, with (1) the Complaint identifying Plaintiff as: "loanDepot.com, LLC, 26642 Towne Centre Drive, Foothill Ranch, CA 92610" (*see* Exhibit E); and (2) Annex G including California Secretary of State records showing that Plaintiff's entity address and entity mailing address are both 26642 Towne Centre Drive, Foothill Ranch, CA 92610. A true and correct copy of the Annexes to the second UDRP Complaint are attached hereto as **Exhibit F**.

37. On July 29, 2020, the Forum again issued a decision transferring the domain to Plaintiff and finding that: "the disputed domain name is confusingly similar to a mark in which Complainant has rights; that Respondent lacks rights or legitimate interests in respect of the disputed domain name; and that the disputed domain name was registered and is being used in bad faith." A true and correct

copy of the Forum's Decision is attached hereto as **Exhibit G**.

IV.     **Defendant's Most Recent Scam Using the LOANDEPOT Marks**

38.     In response to losing the first three domain names in the UDRP actions, Defendants have now registered the domain name: <unitedloandepot.com>. By merely adding the descriptor "United" to Plaintiff's mark, Defendants have created confusion with Plaintiff's well-known LOANDEPOT Marks as to the source, sponsorship, affiliation, or endorsement of Defendants' website, for the purpose of generating revenues by creating confusion with Plaintiff.

39.     As shown below, although Defendants do not operate a legitimate business, this website also purports to offer loans to consumers (i.e., providing the same service as Plaintiff provides under its LOANDEPOT Marks):



In an attempt to show its legitimacy, the website includes reviews from purported clients, as shown below:



40. Defendants' website is interactive because visitors can become involved with the content, such as by leaving comments, actively communicating with Defendants (through the chat feature), requesting information (by sending a message), etc., as shown below:




The website further contemplates that the entire loan process will occur online:

| | | |
|---|---|---|
| ☑ | 1. Select Your Loan Amount | Using the slider tool, select desired loan amount, up to $40,000. Complete the short web form and get your results in minutes! Everything happens over a secure, encrypted line, so you can relax and leave the next step to us. |
| ☑ | 2. Your Loan Options | Getting a personal loan is simple. While you're relaxing, we work hard to find the best loan option possible. Within minutes, we'll send you options for you to review. |
| ☑ | 3. Accept and Sign | The hard work is done! You e-sign the documents, so you don't have to worry about paperwork getting lost in the mail. Our agents do the rest of the work to fund your private personal loan quickly. |
| ☑ | 4. Money In The Bank | Your funds are sent direct deposit straight to your bank account so no check to worry about! All you have to do is enjoy your vacation…or wedding… or new kitchen… or financial freedom. Now that's money made simple; the next step is up to you. |

41.  In addition, Defendants' website explicitly represents that it offers loan services to California residents:



42.  On information and belief, Defendants knowingly and deliberately adopted Plaintiff's Mark to capitalize on its goodwill for the purpose of engaging in a fraudulent gift card scam.  Defendants are not authorized to use the LOANDEPOT Marks, or marks confusingly similar to the LOANDEPOT Marks, in connection with their goods and services.

43.  Defendants' use of the LOANDEPOT Marks or marks confusingly similar to the LOANDEPOT Marks, purportedly for lending services, is likely to cause confusion, mistake and deception such that members of the public are likely to be confused as to the affiliation, connection or relationship between Plaintiff and Defendants, and confused into believing Defendants' goods and services are endorsed or sponsored by Plaintiff, when they are not.

44.  Each of these actions creates a likelihood of consumer confusion.

45.  On information and belief, Defendants' activities complained of herein constitute willful and intentional infringement of the LOANDEPOT Marks, with Defendants intentionally and systematically registering an ever-increasing number of domain names incorporating Plaintiff's trademark in an effort to scam consumers.

46.  Plaintiff seeks injunctive relief to prevent the irreparable harm that will be caused by Defendants' repeated and flagrant exploitation of the renown and

goodwill of the LOANDEPOT Marks to perpetrate a gift card scam. Without an injunction, Defendants will continue to use Plaintiff's Marks to deceive consumers.

### FIRST CLAIM FOR RELIEF

**(Federal Trademark Infringement - 15 U.S.C. § 1114 Against All Defendants)**

47. Plaintiff repeats and incorporates by this reference each and every allegation above as though set forth in full.

48. By the acts and omissions set forth above, Defendant Birbanta and DOES 1-10 have infringed and continue to infringe Plaintiff's federally registered trademark rights in violation of Section 32 of the Lanham Act, 15 U.S.C. section 1114. Defendants' conduct and use of the LOANDEPOT Marks or marks confusingly similar to the LOANDEPOT Marks is likely to cause confusion, mistake and deception among the general purchasing public as to the affiliation, connection, association, origin, sponsorship or approval of Defendants' purported loan services, and interfere with Plaintiff's ability to use its marks to indicate a single quality control source of its products and services.

49. Specifically, Defendants have created the appearance of an affiliation, association, sponsorship or relationship between themselves and Plaintiff by, among other things intentionally and repeatedly incorporating Plaintiff's LOANDEPOT Mark into their domain names, which link to websites that purport to sell the same goods and services as Plaintiff, but instead perpetrate a gift card scam. For these reasons, consumers who are directed to or visit Defendants' websites are likely to be misled into believing that this website is associated, authorized, sponsored, or controlled by Plaintiff.

50. Plaintiff has suffered, is suffering, and will continue to suffer irreparable injury for which Plaintiff has no adequate remedy at law. Plaintiff is therefore entitled to a preliminary and permanent injunction against further infringing conduct by Defendants.

51. Defendants have profited and are profiting by such infringement, and

Plaintiff has been, and is being, damaged by such infringement. Plaintiff is therefore entitled to recover damages from Defendants in an amount to be proved at trial as a consequence of Defendants' infringing activities.

## SECOND CLAIM FOR RELIEF
## (False Designation of Origin and Unfair Competition - 15 U.S.C. § 1125(a) Against All Defendants)

52. Plaintiff repeats and incorporates by this reference each and every allegation above as though set forth in full.

53. The acts of Defendant Birbanta and DOES 1-10 as alleged herein also constitute false designation of origin and unfair competition in violation of Lanham Act section 43(a), 15 U.S.C. section 1125(a).

54. On information and belief, Defendants use the LOANDEPOT Marks in commerce, which use has been done with the deliberate intent of capitalizing and trading on the goodwill and reputation of Plaintiff.

55. Defendants' use in commerce of the LOANDEPOT Marks will tend to cause and, on information and belief, has caused the relevant public and trade to believe erroneously that Defendants and their websites are associated, authorized, sponsored, or controlled by Plaintiff.

56. Defendants' use in commerce of the LOAN DEPOT Marks in connection with his websites and purported goods and services constitutes a false and misleading designation of the origin and/or sponsorship of his website and purported goods and services.

57. By his acts as alleged herein, Defendants have falsely designated and represented goods and services used in commerce in violation of 15 U.S.C. section 1125(a) and, on information and belief, have used the goodwill of Plaintiff to divert potential consumers of Plaintiff's products to their own website, where they lure consumers into a gift card scam.

58. Defendants' conduct constitutes unfair competition that has violated,

and unless restrained and enjoined by this Court will continue to violate, Plaintiff's trademark rights, and will cause irreparable harm, damage, and injury to Plaintiff's goodwill and business reputation.

59. Similarly, if Defendants' conduct is not restrained and enjoined by this Court, Plaintiff will be irreparably injured as a result of Defendants' infringement and wrongful acts, circumstances as to which Plaintiff has no adequate remedy at law. Plaintiff is therefore entitled to a permanent injunction against further infringing and unlawful conduct by Defendants.

60. Defendants have profited and are profiting by such infringement and Plaintiff has been and is being damaged by such infringement. Plaintiff is therefore entitled to recover damages from Defendants in an amount to be proved at trial as a consequence of Defendants' infringing and unlawful activities.

## THIRD CLAIM FOR RELIEF
### (Cybersquatting - 15 U.S.C. §1125(d))

61. Plaintiff repeats and incorporates by this reference each and every allegation above as though set forth in full.

62. Plaintiff is informed and believes and thereon alleges that Defendants registered the internet domain names <usloandepot.com>, <theusloandepot.com>, <capitalloandepot.com>, and <unitedloandepot.com> that are confusingly similar to the distinctive LOANDEPOT Marks and domain name owned by Plaintiff. Defendants' domain names are used and have been used to direct potential purchasers of Plaintiff's products to Defendants and away from Plaintiff.

63. Plaintiff is informed and believes and thereon alleges that in registering such a confusingly similar domain name, Defendants harbored a bad faith intent to profit from use of the internet domain names <usloandepot.com>, <theusloandepot.com>, <capitalloandepot.com>, and <unitedloandepot.com> and Plaintiff's LOANDEPOT Marks. This bad faith is evidenced by other acts taken by Defendant, namely perpetrating a gift card scam operation whereby consumers

looking to borrow money are instructed to buy gift cards, and then provide the gift card information to the scammer.

64. Defendants' registration of the domain names with a bad faith intent to profit constitutes cybersquatting in violation of 15 U.S.C. § 1125(d).

65. Under 15 U.S.C. § 1125(d), Plaintiff is entitled to recover statutory damages, the profits Defendant has derived as a result of each act of cybersquatting, the costs of this action, punitive damages and Plaintiff's reasonable attorney fees because this is an exceptional case.

66. Under 15 U.S.C. § 1125(d), Plaintiff is entitled to elect statutory damages in an amount no less than $1,000 nor more than $100,000 per domain name.

67. Because Plaintiff continues to suffer great and irreparable harm as a result of Defendants' acts of cybersquatting, for which Plaintiff has no adequate remedy at law, Plaintiff is also entitled to injunctive relief.

## FOURTH CLAIM FOR RELIEF
## (Common Law Trademark Infringement and Unfair Competition Against All Defendants)

68. Plaintiff repeats and incorporates by this reference each and every allegation above as though set forth in full.

69. The actions and conduct of Defendant Birbanta and DOES 1-10 as alleged herein are likely to cause confusion, mistake, and deception to consumers as to the affiliation, connection, or association of Defendants with Plaintiff, and as to origin of Defendants' purported goods and services, and Plaintiff's apparent sponsorship or approval of Defendants' purported goods and services.

70. Defendants' unauthorized actions and conduct as alleged herein constitute unfair competition under California common law and direct infringements of Plaintiff's federal trademarks in violation of California common law.

71. Defendants, unless restrained and enjoined by this Court, will continue

to cause irreparable harm, damage and injury to Plaintiff, including but not limited to injury to Plaintiff's goodwill and business reputation.

72. Plaintiff has suffered, is suffering, and will continue to suffer irreparable injury for which Plaintiff has no adequate remedy at law. Plaintiff is therefore entitled to a permanent injunction against further infringing conduct by Defendants.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for an order and judgment against Defendants, and each of them, as follows:

1. That Defendants, and each of them, their owners, partners, agents, servants, distributors, affiliates, employees, representatives, and all those in privity or acting in concert with Defendants or on their behalf, be permanently enjoined and restrained from, directly or indirectly:

   a. Selling, offering to sell, advertising, displaying, or using the LOANDEPOT Marks, any derivative thereof, or any other mark similar thereto, alone or in combination with other words, names, styles, titles, designs or marks in connection with the sale, advertising, marketing and promotion of home loans;

   b. Using in any other way any other mark or designation so similar to the LOANDEPOT Marks as to be likely to cause confusion, mistake or deception as to an affiliation, connection, sponsorship or endorsement of Defendants and/or their products or services by or with Plaintiff;

   c. Representing or implying that Defendants are in any way sponsored by, endorsed by or licensed by Plaintiff;

   d. Using any words, names, designs, titles or marks that create a likelihood of confusion with Plaintiff's trademarks;

2. For an order requiring Defendants to deliver to Plaintiff's attorneys within thirty (30) days after the entry of any injunction, to be impounded or destroyed by Plaintiff, all graphics, literature, signs, labels, prints, packages, wrappers,

containers, advertising and promotional materials, products and any other written materials or items in Defendants' possession or control that bear the aforesaid infringing mark, together with all means and materials for making or reproducing the same, pursuant to 15 U.S.C. section 1118, and other applicable laws;

3. For an order requiring Defendants to file with the Clerk of this Court and serve Plaintiff, within thirty (30) days after the entry of any preliminary or permanent injunction, a report in writing, under oath, setting forth in detail the manner and form in which Defendants have complied with 1 through 2 above;

4. For an award of Defendants' profits and Plaintiff's damages according to proof at trial;

5. For an order requiring Defendants to account for and pay to Plaintiff all gains, profits and advantages derived by Defendants from the unlawful activities alleged herein, and/or as a result of unjust enrichment;

6. For an award of pre- and post-judgment interest at the highest rate allowed by law;

7. For an award of Plaintiff's attorneys' fees, costs and expenses, including but not limited to expert witness fees, incurred in this action; and

8. For such further relief as this Court shall deem just and proper.

Dated:  October 19, 2020

RUTAN & TUCKER, LLP
STEVEN J. GOON
BENJAMIN C. DEMING
SARAH GILMARTIN

By: _____
Steven J. Goon
Attorneys for Plaintiff
LOANDEPOT.COM, LLC

# **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial in this action.

Dated: October 19, 2020

RUTAN & TUCKER, LLP
STEVEN J. GOON
BENJAMIN C. DEMING
SARAH GILMARTIN

By: _____
Steven J. Goon
Attorneys for Plaintiff
LOANDEPOT.COM, LLC